**Darlene MANSON, Deborah and Keith Nicholas, and Germano DePina, on behalf of themselves and all others similarly situated**

**v.**

**GMAC MORTGAGE, LLC, Avelo Mortgage, LLC, and U.S. Bank National Association, as Trustee for Structured Asset Securities Corporation Mortgage Pass–Through Certificates Series 2006–EQ, on behalf of themselves and as representatives for all similarly situated, and Harmon Law Offices, P.C. and Ablitt Law Offices, P.C.**

**Civil Action No. 08–12166–RGS.**

United States District Court,
D. Massachusetts.

March 18, 2009.

---

Kevin Costello, Shennan Alexandra Kavanagh, Gary E. Klein, Roddy, Klein and Ryan, Boston, MA, for Plaintiffs.

R. Bruce Allensworth, Gregory N. Blase, Phoebe Sears Winder, K & L Gates LLP, Michael C. Gilleran, Adler Pollock & Sheehan P.C., Lawrence P. Heffernan, Danielle Andrews Long, Kate L. Moran, John W. Steinmetz, Robinson & Cole, LLP, James W. McGarry, Richard A. Oetheimer, Goodwin Procter, LLP, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION TO REMAND AND LAW FIRM DEFENDANTS' MOTIONS TO DISMISS

STEARNS, District Judge.

This class action,[1] originally filed on November 20, 2008, in the Business Litigation Section of the Suffolk Superior Court, arises out of harms caused to the named plaintiffs and others similarly situated by defendants' allegedly improper mortgage foreclosure practices. Plaintiffs allege violations of various provisions of the Massachusetts General Laws. More specifically, plaintiffs contend that the foreclosed mortgages had not been validly assigned to the

---

1. The class has not yet been certified.

foreclosing banks at the time the foreclosure actions were undertaken. Plaintiffs further allege that the defendant banks and law firms knew that the foreclosures violated: (i) the Statute of Frauds, Gen. Laws ch. 259, § 1; (ii) the statutory notice and sale requirements, Gen. Laws ch. 244, §§ 14 and 35A, and ch. 183, § 21; and (iii) the common-law duty of good faith and diligence.

Deutsche Bank National Trust Company (Deutsche Bank)[2], with the consent of the other named defendants, filed a Notice of Removal with this court on December 31, 2008, pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. §§ 1332(d) and 1453. Plaintiffs now move to remand the case to the Superior Court, arguing that CAFA requires this court to decline jurisdiction pursuant to 28 U.S.C. § 1332(d)(4)(A) and (B), or alternatively, that the removing defendants have failed to meet CAFA's amount in controversy requirement of $5 million. See 28 U.S.C. §§ 1332(d)(2) and (d)(6). A hearing on the motion to remand was held on March 2, 2009. The court also heard oral argument on pending motions to dismiss filed by the law firm defendants Harmon and Ablitt. For the reasons stated, the Motion to Remand will be *DENIED*.

## BACKGROUND

A putative "Plaintiff Class" is represented by the named plaintiffs in this action. The proposed class members are all Massachusetts residents, and are said to be some 1,000 persons in number. Members of the Plaintiff Class fall into one of two subclasses. The Foreclosed Borrower subclass consists of class members whose primary residence was foreclosed by a power of sale in the past four years by a defendant that did not contemporaneously possess a written assignment of the underlying mortgage at the time the Notice of Sale was served. See Gen. Laws ch. 244, § 14. The Improper Notice subclass consists of class members who face a pending foreclosure initiated by a defendant that did not have a written assignment of the underlying mortgage when the Notice of Sale was served and/or when a Right to Cure notice was sent. See Gen. Laws ch. 244, §§ 14 and 35A.

Defendants GMAC Mortgage, LLC (GMAC), Avelo Mortgage, LLC (Avelo), and U.S. Bank National Association (U.S. Bank) comprise the "Named Foreclosing Defendants." Harmon Law Offices, P.C. (Harmon) and Ablitt Law Offices, P.C. (Ablitt) are the "Law Firm Defendants." Plaintiffs also limn a broader "Defendant Class," which "includes and is represented by the Named Foreclosing Defendants and consists of all commercial entities that within the last four years have foreclosed, or are in the process of foreclosing on, a mortgage in Massachusetts or who have sent foreclosure notices pursuant to Gen. Laws ch. 244, § 14 or 35A, and who did not before initiating foreclosure obtain a written assignment of the mortgage."[3] The named plaintiffs, on behalf of themselves and others similarly situated, seek damages and declaratory and injunctive relief, including the enjoining of impending and future mortgage sales.[4]

---

**2.** Deutsche Bank was dismissed by plaintiffs as a named defendant on January 30, 2009.

**3.** Although the certification of a defendant class is not unheard of, it is "unusual" and poses "unique" problems both in applying Rule 23 criteria and in navigating due process concerns. *Manual for Complex Litigation,* Fourth, § 21, at 244 & n. 740 (2004). *See*

*also Tilley v. TJX Cos., Inc.,* 345 F.3d 34, 37 (1st Cir.2003). Whether plaintiffs' attempt to certify a defendant class in this action is appropriate is an issue for another day.

**4.** According to the record, plaintiff Darlene Manson's mortgage was foreclosed by defendants GMAC and Harmon. The sale took

## DISCUSSION

 CAFA provides that federal courts have jurisdiction over class actions based on state law when: (1) there is "minimal" diversity (meaning that at least one plaintiff and one defendant are from different states); (2) the amount in controversy exceeds $5 million; and (3) the action involves at least 100 class members. 28 U.S.C. §§ 1332(d)(2) and (5)(B). A defendant seeking removal of an action to federal court under CAFA has the burden of demonstrating that each of the three elements is met. *Amoche v. Guar. Trust Life Ins. Co.*, 556 F.3d 41, 48–49 (1st Cir. 2009) (citing *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir.2008) ("The removing party, as the proponent of federal jurisdiction, bears the burden of describing how the controversy exceeds $5 million.")). The parties do not dispute the first and third elements of removal (minimal diversity and numerosity). The parties disagree, however, over the amount in controversy. On this issue, defendants have the burden of demonstrating a "reasonable probability" that the aggregate claims of the plaintiff class were greater than $5 million at the time of removal.[5] *Id.* at 49 (noting agreement with those circuits that have used "'reasonable probability' as the standard a removing defendant must meet under CAFA," a standard that "for all practical purposes [is] identical to the preponderance standard adopted by several circuits.").

Plaintiffs argue that the primary relief they seek is injunctive and declaratory and not monetary. Plaintiffs estimate the money damages in controversy at approximately $1,200 per class member.[6] With a class of 1,000 members, more or less, plaintiffs assert that the amount in controversy is approximately $1.2 million.[7] Moreover, they note that any costs associated with the implementation of equitable relief are not to be considered in the calculation of the amount in controversy.

 GMAC, on the other hand, argues that the $5 million threshold is met by (at least) two different calculations. GMAC relies on the Supplemental Declaration of Scott Zeitz, its litigation analyst. Zeitz reviewed and analyzed GMAC's internal records to determine the number of Massachusetts property loans that were referred for foreclosure during the years 2005 through 2007. He then refined that number by identifying: (i) the number of referrals that ultimately resulted in a foreclosure sale; and (ii) the number of properties that were sold to third parties (that is, not repurchased by GMAC). According

---

place on March 25, 2008, while the written assignment of her mortgage is dated April 29, 2008. Plaintiffs Deborah and Keith Nicholas's mortgage was foreclosed by defendants Avelo and Ablitt; the property sale took place on August 8, 2008, while the written assignment of the mortgage is dated November 18, 2008. Plaintiff Germano DePina's mortgage was foreclosed by defendants U.S. Bank and Harmon; the sale has yet to occur, and (upon plaintiffs' information and belief) no written assignment of the mortgage has been executed.

5. Events subsequent to removal that reduce the amount in controversy do not divest a federal court of CAFA jurisdiction. *See Coventry Sewage Assocs. v. Dworkin Realty Co.*, 71 F.3d 1, 6 (1st Cir.1995).

6. It may be worth noting at this juncture that "plaintiffs' likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is *in controversy* in the case, not how much the plaintiffs are ultimately likely to recover." *Amoche*, 556 F.3d at 51 (emphasis in original).

7. Although plaintiffs plead a class "in excess" of 1,000, they assert that the number of class members will never reach the 4,000 that would be required (that is, 4,000 × $1,200) to meet the $5 million threshold.

to Zeitz, a total of 3,934 loans were referred for foreclosure between January 1, 2005, and December 31, 2007. Of the 3,934 referrals, 1,048 resulted in foreclosure sales. At these sales, forty-eight properties were sold to third parties. The total paid for the forty-eight properties was $15,022,258 (an average of $312,964 per property).[8]

Alternatively, GMAC asserts that even if plaintiffs' method of calculating the amount in controversy (based solely on the claimed per capita money damages) is correct, the amount in controversy still exceeds $5 million. According to Zeitz, the actual amount assessed foreclosed borrowers in costs and fees was approximately $8,000 per transaction. Defendants point out that plaintiffs base their $1,200 figure on an estimate of attorney's fees only. GMAC gives plaintiff Manson's account as an example.

> Attorney's fees and costs in the amount of $1,250, with additional eviction attorney's fees of $325, were assessed to Ms. Manson's account as a result of this foreclosure. In addition to these attorney's fees and costs, GMAC incurred $6,811.78 in foreclosure-related expenses, all of which were assessed to Ms. Manson's account. Thus, for the Manson loan, a total of $8,061.78 was assessed to the account.

Zeitz Decl. ¶ 10.[9]

Given: (i) plaintiffs' demand for "cancellation of fees and costs for invalid sale processes"; (ii) plaintiffs' contention that Manson is representative of the class; and (iii) an undisputed total number of class members of at least 1,000 persons, defendants assertion that the amount in controversy exceeds $8 million, satisfies their burden of demonstrating to a "reasonable probability" that the amount in controversy exceeds $5 million. Plaintiffs must therefore demonstrate that another jurisdictional exception under CAFA applies if they are to succeed on their motion to remand.

■ Congress has created certain exceptions to CAFA, under which a federal

---

**8.** GMAC conceded at oral argument that it does not know how many of the forty-eight properties identified by Zeitz fall within plaintiffs' definition of an improper sale. GMAC's point, however, is directed at plaintiffs' contingent claim that defendants may be liable for the collective replacement value of the homes that were foreclosed.

**9.** The Zeitz affidavit and the information it contains avoids the pitfalls of the affidavit submitted in *Amoche*, which for lack of detail failed to persuade the Court of Appeals that defendant had carried its burden of demonstrating the amount in controversy. *See Amoche*, 556 F.3d at 52–53. The burden is, however, not an onerous one. The Court of Appeals recognized that at the removal stage little or no evidence has typically been produced. Consequently, a court considering the amount in controversy need not view the evidence solely in the light most favorable to the plaintiffs; rather, the court may review the evidence in the record presented by both sides.

[D]eciding whether a defendant has shown a reasonable probability that the amount in controversy exceeds $5 million may well require analysis of what *both* parties have shown. Merely labeling the defendant's showing as "speculative" without discrediting the facts upon which it rests is insufficient. *See Strawn [v. AT & T Mobility LLC]*, 530 F.3d [293,] 299 (finding the defendant's showing sufficient to establish the amount in controversy under CAFA where the plaintiffs had "offered nothing" to challenge the accuracy of the defendant's affidavit). In the course of that evaluation, a federal court may consider which party has better access to the relevant information. *See Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 n. 3 (11th Cir.2006) ("Defendants have better access to information about conduct by the defendants, but plaintiffs have better access to information about which plaintiffs are injured and their relationship to various defendants.").

*Id.* at 51 (emphasis in original).

court is required to decline the exercise of jurisdiction. Declination is mandatory if plaintiffs meet their burden of demonstrating that:

(i) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed; at least 1 defendant is a defendant from whom significant relief is sought by members of the plaintiff class; whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and who is a citizen of the State in which the action was originally filed; principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and during the 3–year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.[10]

28 U.S.C. § 1332(d)(4)(A) (the "local controversy" exception); or

(ii) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

28 U.S.C. § 1332(d)(4)(B) (the "home-state controversy" exception).[11] The burden of proving the applicability of either the "home-state controversy" exception or the "local controversy" exception lies with the party moving to remand. *McMorris v. TJX Cos., Inc.*, 493 F.Supp.2d 158, 164–166 (D.Mass.2007) (citing *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1023 (9th Cir. 2007)).

■ Plaintiffs first contend that the requirements of the local controversy exception are fulfilled because they seek "significant relief" from the Law Firm Defendants, both of which are citizens of Massachusetts, and moreover, that the Law Firm Defendants' conduct forms a "significant basis" for their claims. Neither CAFA nor the First Circuit provides any direct guidance for determining when relief sought is "significant" or when a defendant's conduct is a "significant" basis for a claim. Courts that have addressed the issue have required that the conduct of an allegedly "significant" defendant "must be significant in relation to the conduct alleged against other defendants in the complaint, and that 'the relief sought against that defendant is a significant portion of the entire relief sought by the class.'" *Ava Acupuncture P.C. v. State Farm Mut. Auto. Ins. Co.*, 592 F.Supp.2d 522, 528 (S.D.N.Y.2008) (quoting *Evans v. Walter Indus., Inc.*,

---

**10.** On or about January 2, 2009, plaintiffs Stephen Lezama and Crystal Lezama, Adam Kayi a/k/a Abderrahman Kayi, Geraldo Dosanjos, and Roberto Szumik, on behalf of themselves and purportedly on behalf of a putative, statewide class of similarly situated borrowers from Massachusetts, filed a class action Complaint in the Suffolk Superior Court against U.S. Bank, Deutsche Bank, Mortgage Electronic Registration Systems, Inc., Barrett Law, and Harmon, with claims analogous to this case. The *Lezama* action has also been removed to this court under CAFA.

**11.** The class, by definition, is limited to residents of Massachusetts, and the parties do not dispute citizenship, therefore, the court does not require evidence of citizenship with respect to either exception. *See In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 592 F.Supp.2d 146, 148 n. 2 (D.Me.2008) ("Since the class by definition is limited to citizens of Florida, there is no need for evidence as to what percentage of the class is Florida citizenry.").

449 F.3d 1159, 1167 (11th Cir.2006)). "[W]hether a putative class seeks significant relief from an in-state defendant includes not only an assessment of how many members of the class were harmed by the defendant's actions, but also a comparison of the relief sought between all defendants and each defendant's ability to pay a potential judgment." *Robinson v. Cheetah Transp.*, 2006 WL 468820, at *3 (W.D.La. Feb. 27, 2006).

The court does not diminish the Law Firm Defendants' contribution to the wrongful activity alleged in the Complaint, or the role that their actions played in creating a basis for the relief sought. The court, however, finds that plaintiffs have not established that "the relief sought against [the Law Firm Defendants] is a significant portion of the entire relief sought by the class" when the claims against the Foreclosing Defendants are considered. *Ava Acupuncture*, 592 F.Supp.2d at 528. Having determined that the amount in controversy exceeds $5 million, the court cannot say that the estimated $1,200 in legal fees paid to the Law Firm Defendants in each class member's case constitutes a significant portion of the entire relief plaintiffs request when costs, fees, and the replacement value of homes are factored into the equation. Therefore, the court is not compelled to decline jurisdiction under the local controversy exception.

▮▮▮▮ With respect to the home-state controversy exception, the statute does not define what Congress meant by a "primary defendant." However, courts and litigants generally refer to a Report of the Senate Judiciary Committee, issued after CAFA's enactment, attempting to give content to the term.[12] *See Moua v. Jani–King of*

*Minnesota, Inc.*, 2009 WL 212425, at *3 and n. 4 (D.Minn. Jan. 27, 2009), and cases cited.

> [T]he Committee intends that "primary defendants" be interpreted to reach those defendants who are the real "targets" of the lawsuit-i.e., the defendants that would be expected to incur most of the loss if liability is found. Thus, the term "primary defendants" should include any person who has substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed classes (as opposed to simply a few individual class members).

*Id.* (quoting S.Rep. No. 109–14, at 43 (2005), U.S.Code Cong. & Admin.News 2005, pp. 40–41).

The courts that have been asked to ascertain the meaning of "primary defendants" have relied on several potential (and sometimes incongruent) understandings of the term. Thus, a "primary defendant" has been understood to mean a defendant who (1) has the greater liability exposure; (2) is most able to satisfy a potential judgment; (3) is sued directly, as opposed to vicariously, or for indemnification or contribution; (4) is the subject of a significant portion of the asserted claims; or (5) is the only defendant named in one particular cause of action.

*Id.* at *3. Courts generally agree that the term "the primary defendants" means that *all* primary defendants must be citizens of the state concerned. *Anthony v. Small Tube Mfg. Corp.*, 535 F.Supp.2d 506, 515 (E.D.Pa.2007); *Robinson*, 2006 WL 468820, at *3; *Moua*, 2009 WL 212425, at

---

12. The Senate Report specifically refers to "class actions that are subject to subsections 1332(d)(3) [discretionary declination of juris-diction] and (d)(5)(A) [state actors]", and not to the two exceptions at issue here.

*3 n. 3. GMAC insists that the Law Firm Defendants do not meet the definition of primary defendants because relief against the Foreclosing Defendants (the *lenders*) is the relief primarily sought by plaintiffs. Further, GMAC argues that the lenders' hiring of local attorneys to act as their agents in conducting foreclosure sales does not elevate the attorneys' status into that of "primary" actors in the transaction.

Whether the Law Firm Defendants are in fact "primary defendants" need not be decided as GMAC, U.S. Trust, and Avelo are without doubt primary defendants. Plaintiffs name all defendants collectively in all counts of the Complaint, and the Foreclosing Defendants are each named as having independent liability exposure. As *all* of the primary defendants are not citizens of Massachusetts, the court also need not decline jurisdiction under the home-state controversy exception.

### ORDER

For the foregoing reasons, plaintiffs' motion to remand is *DENIED.* The motions of Harmon and Ablitt to dismiss are also *DENIED.*

SO ORDERED.