# United States Court of Appeals
## For the First Circuit

No. 14-1937

DAVID ROMULUS, CASSANDRA BEALE, NICHOLAS HARRIS,
ASHLEY HILARIO, AND ROBERT BOURASSA, on behalf of themselves
and all other persons similarly situated,

Plaintiffs, Appellees,

v.

CVS PHARMACY, INC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Howard, Circuit Judges.

James Norman Boudreau, with whom John F. Farraher, Jr., and
Greenberg Traurig, LLP were on brief for appellant.
Thomas V. Urmy, Jr., with whom Rachel M. Brown, Patrick J.
Vallely, and Shapiro Haber & Urmy LLP were on brief for appellees.

October 24, 2014

**LYNCH, Chief Judge**.  CVS Pharmacy, Inc. takes this interlocutory appeal from an order granting the plaintiffs' motion to remand a putative class action for wage and hour violations.  In this case of first impression in this circuit, we clarify the removal time periods and mechanisms under the Class Action Fairness Act of 2005 ("CAFA").

Under CAFA, federal courts have jurisdiction over a class action if, among other requirements, the amount in controversy exceeds $5 million.  Standard Fire Ins. Co. v. Knowles, 133 S. Ct. 1345, 1347 (2013) (citing 28 U.S.C. § 1332(d)(2), (d)(5)).  Section 1446(b) specifies two time periods within which a defendant must remove a class action that satisfies CAFA's jurisdictional requirements from state court to federal court.  See 28 U.S.C. § 1453(b) (applying Section 1446(b)(1) and (b)(3) to class actions).  If the case as stated by the initial pleading is removable, Section 1446(b)(1) requires the defendant to remove within thirty days of its receipt.  See id. § 1446(b)(1).  Section 1446(b)(3) requires the defendant to remove within thirty days of receiving a subsequent paper from which it may first be ascertained that the class action is or has become removable.  See id. § 1446(b)(3).

The district court granted the plaintiffs' motion to remand for several reasons.  Romulus v. CVS Pharmacy, Inc., No. 13-10305-RWZ, 2014 WL 1271767 (D. Mass. Mar. 27, 2014) [hereinafter

Romulus II].  It held that CVS's notice of removal came too late to meet the thirty-day deadline in Section 1446(b)(1), and that the second thirty-day deadline in Section 1446(b)(3) did not apply. Id. at *2-3.  It then held that CVS had not met its burden to establish the substantive amount in controversy requirement.  Id. at *3 n.3.  We reverse.  We hold that CVS's second notice of removal was timely under Section 1446(b)(3), and that CVS sufficiently demonstrated that the amount in controversy exceeds $5 million.  Removal was appropriate; remand was not.[1]

We resolve the previously unanswered question in this circuit as to when the two time limits in Section 1446(b) mandate removal within thirty days.  In line with the other circuits that have adopted a bright-line approach, we hold that the time limits in Section 1446(b) apply when the plaintiffs' pleadings or the plaintiffs' other papers provide the defendant with a clear statement of the damages sought or with sufficient facts from which damages can be readily calculated.  We also clarify the meaning of the statutory term "other paper."  28 U.S.C. § 1446(b)(3).  On the merits, we hold that CVS has adequately met its burden to show removal.

---

[1]  The plaintiffs chose a state forum and prefer to remain there.  So, for removal purposes, their incentives are to minimize damages.  Defendant CVS prefers the case to be in federal court. So, its incentives are to maximize damages at present for CAFA removal.  Of course, at trial, those incentives are reversed.

# I. Procedural History

Named plaintiffs David Romulus, Cassandra Beale, Nicholas Harris, Ashley Hilario, and Robert Bourassa, all "Shift Supervisors" at CVS stores in Massachusetts, filed a First Amended Class Action Complaint against CVS in Massachusetts Superior Court on August 31, 2011.[2] The plaintiffs allege that CVS has a policy under which Shift Supervisors must remain on store premises when taking rest or meal breaks when there are no other managerial employees on duty or when there is only one other employee on duty. Despite requiring Shift Supervisors to stay on store premises, the plaintiffs allege that CVS does not pay them for these "breaks" in violation of the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148, and the Massachusetts Overtime Statute, Mass. Gen. Laws ch. 151, §§ 1A, 1B.

The plaintiffs allege that "CVS has employed many hundreds, if not thousands, of Shift Supervisors in Massachusetts" since July 25, 2008. They seek unpaid wages (including overtime wages), treble damages, interest, attorneys' fees, and costs for those breaks in the class period during which they were required to stay on store premises. The plaintiffs did not provide information on the number of breaks at issue, or the total amount of damages sought in the First Amended Complaint.

---

[2] The original complaint was filed on July 26, 2011, but was never served.

CVS, perhaps in an abundance of caution, nevertheless sought to remove within thirty days of service, on September 30, 2011. To calculate the plaintiffs' damages, CVS relied on a series of estimates. Assuming that the class members lost each meal break during the class period, CVS calculated total damages of $10,396,944.[3]

The district court rejected CVS's calculation and granted the plaintiffs' motion to remand the case to Massachusetts state court. Romulus v. CVS Pharmacy, Inc., No. 11-11734-RWZ, 2012 WL 899577 (D. Mass. Mar. 16, 2012) [hereinafter Romulus I]. The court noted that "[t]he difficulty with defendant's calculation is that it assumes all shift supervisors lost their break each day of their employment during the class period while the complaint clearly states that the circumstances leading to such loss occurred 'sometimes.'" Id. at *1. "Because defendant's assumptions are in no way rooted in the allegations of the complaint, defendant fails to meet its burden of proving the requisite jurisdictional amount."

---

[3] In its opposition to the plaintiffs' motion to remand, CVS estimated that all Shift Supervisors, approximately 2583, worked 516,105 shifts of six or more hours during the relevant time period. Assuming that the class members lost each thirty-minute meal break on all of those shifts, CVS multiplied the number of shifts by one half of the average hourly rate, $13.43, and calculated damages of $3,465,648. CVS trebled that amount to reach a total damages estimate of $10,396,944. Even if wage violations occurred in only 50 percent of these meal breaks, the damages total would exceed $5 million. See Romulus v. CVS Pharmacy, Inc., No. 11-11734-RWZ, 2012 WL 899577, at *1 (D. Mass. Mar. 16, 2012).

<u>Id.</u> The propriety of the district court's first remand order is not before us.

The parties conducted preliminary discovery upon their return to state court. CVS provided the plaintiffs with electronic time and attendance data relating to Massachusetts Shift Supervisors from August 2010 through June 2012. Analyzing this data, the plaintiffs found 116,499 meal breaks during this period when no other Shift Supervisor was working. They informed CVS of this number, a very important component of this damages calculation, by email on January 18, 2013.

Within thirty days of receipt of this email, CVS filed its second notice of removal on February 15, 2013. CVS extrapolated the plaintiffs' number of violations over the entire class period, and argued that there was "a reasonable probability that the amount in controversy exceeds $5,000,000." CVS argued that this second notice of removal was "timely under 28 U.S.C. § 1446(b)(3) because it was filed within 30 days of the date that CVS ascertained that this case became removable" based on the email provided by the plaintiffs.

On March 27, 2014, the district court again granted the plaintiffs' motion to remand, finding that CVS's notice of removal was untimely and concluding on the merits that CVS had "failed to 'show a reasonable probability that more than $5 million is at stake in this case.'" <u>Romulus II</u>, 2014 WL 1271767, at *3 & n.3

(citing Amoche v. Guar. Trust Life Ins. Co., 556 F.3d 41, 50-51 (1st Cir. 2009)).

On the question of timeliness, the district court concluded that CVS must rely on Section 1446(b)(3) since "[f]ar more than thirty days have elapsed since service of plaintiffs' amended complaint." Id. at *2. Without the guidance of circuit precedent, the district court held that the defendant had failed to identify any paper "providing information from which it later ascertained removability for the first time." Id. Even if the January 18, 2013, email qualified as an "other paper" for the purposes of Section 1446(b)(3), it "provide[d] no 'new' information regarding removability that could not have been previously ascertained by defendant in light of the allegations in the amended complaint and its own knowledge and information." Id. at *2-3. The district court highlighted that the estimate contained in the January 18, 2013, email came from data that CVS had possessed from the beginning of litigation and had provided to the plaintiffs. Id. at *2. The district court found that CVS had violated a duty to make a reasonable inquiry into its own records at the time of the complaint. Id. (citing Sok v. U.S. Fid. & Guar. Co., No. 91-12028, 1992 WL 97193, at *1 (D. Mass. Apr. 27, 1992)).

On the substantive question of the amount in controversy, the district court noted the plaintiffs' objections to defendant's calculations of the amount in controversy. Id. at *3 n.3. The

district court, without further explanation, then stated that the "Plaintiffs' arguments on these points are persuasive, and I find that defendant, despite having 'better access to the relevant information,' has failed to 'show a reasonable probability that more than $5 million is at stake in this case.'" Id. (quoting Amoche, 556 F.3d at 50-51).

CVS sought leave to appeal the district court's order on an interlocutory basis under 28 U.S.C. § 1453(c)(1). This court asked the district court to clarify "whether, in its view, the removal was untimely with respect to a particular 30-day period in § 1446(b); and if so, whether the 30 days ran from a particular date." The district court explained in response:

> The only possibly qualifying document [under § 1446(b)(3)] [defendant] received was the January 18, 2013, e-mail. I deemed it inadequate to serve as an "other paper" because it was based entirely on information provided by defendant. Because the information was readily available to defendant from the start, it provided no "new" information regarding removability that would allow use of the date of the e-mail as the starting date for determining timeliness. Accordingly, I deemed the proper date for calculating timeliness to be the date of the return of service, September 8, 2011, which necessarily followed receipt by defendant of the First Amended Complaint.

Romulus v. CVS Pharmacy, Inc., No. 13-10305-RWZ, 2014 WL 2435089, at *1 (D. Mass. May 30, 2014) [hereinafter Romulus III].

This Court granted the petition for review on September 8, 2014, and asked the parties to address a series of questions.[4] The parties submitted supplemental briefing on these issues.

We now hold that Section 1446(b)'s thirty-day clocks are triggered only when the plaintiffs' complaint or plaintiffs' subsequent paper provides the defendant with sufficient information to easily determine that the matter is removable. The district court erred in imposing too great a duty of inquiry on the defendant. In this case, the plaintiffs' January 18, 2013, email triggered Section 1446(b)(3)'s thirty-day deadline by providing sufficient information from which to easily ascertain the amount in

---

[4] The Court posed the following questions:

-- According to the Seventh Circuit, "[e]very circuit that has addressed the question of removal timing has applied [28 U.S.C.] § 1446(b) literally and adopted some form of a bright-line rule that limits the court's inquiry to the clock-triggering pleading or other paper and, with respect to the jurisdictional amount in particular, requires a specific, unequivocal statement from the plaintiff regarding the damages sought." Walker v. Trailer Transit, Inc., 727 F.3d 819, 824 (7th Cir. 2013). Is this, or should this be, the rule in this circuit?

-- Under the removal statute, what time-sensitive duty, if any, does the defendant have to investigate the facts in response to plaintiff's allegations?

-- Assuming that neither 30-day period in § 1446(b) is advancing, does the defendant have a deadline for coming forward with its own information supporting removal?

-- Again assuming that neither 30-day period in § 1446(b) is advancing, does any mechanism in the removal statute regulate a second or successive removal that is based on information available to the defendant at the time of the previous removal?

controversy for the first time. The plaintiffs' email was not disqualified from being an "other paper" by the fact that it was based on information provided by the defendant. CVS's second notice of removal on February 15, 2013, was therefore timely.

In addition, we hold that CVS carried its substantive burden of demonstrating a reasonable probability that the amount in controversy exceeds $5 million, as required for federal jurisdiction under CAFA. We do not, as a consequence, reach the difficult questions related to the availability and mechanics of removal outside of the two thirty-day windows in Section 1446(b).

## II. Appellate Justiciability

The plaintiffs mistakenly argue that this interlocutory appeal is untimely, and that this court lacks jurisdiction over the appeal. Under CAFA, "[i]f the court of appeals accepts an appeal under paragraph (1), the court shall complete all action on such appeal, including rendering judgment, not later than 60 days after the date on which such appeal was filed, unless an extension is granted under paragraph (3)." 28 U.S.C. § 1453(c)(2). The plaintiffs claim that CVS filed its appeal on April 7, 2014, and that an appellate decision was due by May 30, 2014.

The April 7, 2014, filing was not an appeal, but a petition for permission to appeal. Under CAFA, the appellate court had discretion to grant CVS permission to appeal, and no appeal

existed until we did so. See id. As the Fifth Circuit has persuasively reasoned:

> When a party files a notice of appeal, there is, at that very point in time, an appeal, albeit one that may later be subject to dismissal for jurisdictional or procedural insufficiency. Where, however, a party "applies" for leave to appeal, or "seeks permission" to do so, there is logically no appeal until the court vested with the authority to grant or deny leave has done so.

Patterson v. Dean Morris, L.L.P., 444 F.3d 365, 369 (5th Cir. 2006).

The sixty-day deadline for appellate consideration begins to accrue from the date on which the court of appeals grants permission to appeal. Coll. of Dental Surgeons of P.R. v. Conn. Gen. Life Ins. Co., 585 F.3d 33, 37 (1st Cir. 2009). We granted CVS permission to appeal on September 8, 2014, and have 60 days from that date to render judgment, unless an extension is granted. See 28 U.S.C. § 1453(c)(2).

### III. Analysis

The district court's jurisdictional determination on removal is subject to de novo review. Amoche, 556 F.3d at 48. Issues of statutory interpretation are also subject to de novo review. Hannon v. City of Newton, 744 F.3d 759, 765 (1st Cir. 2014). "However, where the district court's assessment of a jurisdictional issue turns on findings of fact, we accept those findings unless they are clearly erroneous." Cooper v. Charter

-11-

Commc'ns Entm'ts I, LLC, 760 F.3d 103, 106 (1st Cir. 2014). Findings of fact were not made here.

A.        Timeliness of Removal Under Section 1446(b)

        1.        Statutory Time Limits

        Section 1446(b) sets forth two thirty-day windows for removal based on pleadings, or other papers, provided by the plaintiff.  First, Section 1446(b)(1) states:

> (1)  The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . .

28 U.S.C. § 1446(b)(1).  Second, Section 1446(b)(3) states:

> (3)  Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

Id. § 1446(b)(3).  The district court's first remand order, issued after CVS removed the case within thirty days of the initial pleading, is not before us.  The question is whether CVS's second notice of removal was timely under Section 1446(b)(3).

        The district court implicitly held that the Section 1446(b)(1) clock runs in every case from the date of service, regardless of the contents of the complaint.  See Romulus III, 2014

-12-

WL 2435089, at *1. Having missed the first thirty-day period, the district court held that CVS "must rely on section 1446(b)(3) to sustain its second attempt to remove." Romulus II, 2014 WL 1271767, at *2. The district court concluded that Section 1446(b)(3) did not apply in this case since CVS had identified no "other paper" that set forth "new information supporting federal jurisdiction over this case." Id. The district court reasoned that information on damages is not "new" if the defendant could have discovered it earlier through its own investigation. See id. This is not how the statute reads and would produce a difficult-to-manage test.

The plaintiffs do argue that the text of the statute supports the district court's reading of Section 1446(b). First, Section 1446(b)(1) includes the mandatory language that "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading." 28 U.S.C. § 1446(b)(1) (emphasis added). The plaintiffs argue that Section 1446(b)(1), by its terms, requires removal within thirty days of service in every case, regardless of whether the complaint evidences removability or not. Section 1446(b)(3) then operates as an exception to allow a defendant to remove outside of this initial thirty-day window if the defendant "first . . . ascertain[s]" that the case is removable from a subsequent paper. Id. § 1446(b)(3).

-13-

According to the plaintiffs, Section 1446(b)(3) cannot be invoked if the defendant could have "ascertained," -- through "some sort of investigative action" by the defendant -- that the case was removable at some point prior to the receipt of the plaintiffs' paper.

To the contrary, the text of the statute focuses solely on when the <u>plaintiffs'</u> papers reveal removability.[5]  Section 1446(b)(1) must be understood in conjunction with Section 1446(b)(3), which applies instead of Section 1446(b)(1) "if the case <u>stated by the initial pleading</u> is not removable."  28 U.S.C. § 1446(b)(3) (emphasis added).  The language of Section 1446(b)(3) makes clear that removability in Section 1446(b)(1) is to be judged by the case as stated on the face of the complaint.

When removability is not clear from the initial pleading, Section 1446(b)(3) then looks to the plaintiffs' subsequent papers. Specifically, Section 1446(b)(3) applies when the defendant receives "a copy of an amended pleading, motion, order or other paper <u>from which</u> it may first be ascertained that the case is one which <u>is or has become</u> removable."  <u>Id.</u> (emphases added).  Even if the case was previously removable, Section 1446(b)(3) does not

---

[5]  This case does not concern, nor do we address, a situation where the time limit is triggered by an "order" as contemplated in Section 1446(b)(3).  It is instead limited to those cases in which a plaintiff's pleading or some "other paper" from the plaintiff is provided to the defendant.

apply until removability can first be ascertained from the plaintiffs' own papers.

Based on the text of the statute, we hold that the defendant looks to the papers provided by the plaintiffs to determine whether Section 1446(b)'s removal clocks have been triggered. Every circuit to have addressed this issue has likewise "adopted some form of a bright-line rule that limits the court's inquiry to the clock-triggering pleading or other paper" in order to determine removability. Walker v. Trailer Transit, Inc., 727 F.3d 819, 824 (7th Cir. 2013) (collecting cases); see also Cutrone v. Mortg. Elec. Registration Sys., Inc., 749 F.3d 137, 143-45 (2d Cir. 2014).

The bright-line test varies in severity among the circuits. The Seventh Circuit, for example, has explained that "the question is whether [the clock-triggering pleading or other paper], on its face or in combination with earlier-filed pleadings, provides specific and unambiguous notice that the case satisfies federal jurisdictional requirements and therefore is removable." Walker, 727 F.3d at 825. The Seventh Circuit highlighted that this rule requires the plaintiff to "specifically disclose the amount of monetary damages sought" in order to trigger Section 1446(b)'s deadlines. Id. at 824. The Seventh Circuit, though, has not addressed whether Section 1446(b) can be triggered by a simple calculation on the part of the defendant from data revealed by the

plaintiff's papers in the absence of a specific damages estimate from the plaintiff.

The Second Circuit has also limited the inquiry to the contents of the complaint or later paper, but has allowed the plaintiff to trigger the removal deadlines either by "explicitly specif[ying] the amount of monetary damages sought <u>or</u> [by] set[ting] forth facts from which an amount in controversy in excess of $5,000,000 can be ascertained."  <u>Cutrone</u>, 749 F.3d at 145 (emphasis added).  The Second Circuit explained that, even under a bright-line rule, "defendants must still 'apply a reasonable amount of intelligence in ascertaining removability.'"  <u>Id.</u> at 143 (quoting <u>Whitaker</u> v. <u>Am. Telecasting, Inc.</u>, 261 F.3d 196, 206 (2d Cir. 2001)).  Although defendants must apply a reasonable amount of intelligence, they "have no independent duty to investigate whether a case is removable."  <u>Id.</u>

Citing the same language, the Ninth Circuit has stated that the defendant must "'apply a reasonable amount of intelligence in ascertaining removability.'"  <u>Kuxhausen</u> v. <u>BMW Fin. Servs. NA LLC</u>, 707 F.3d 1136, 1140 (9th Cir. 2013) (quoting <u>Whitaker</u>, 261 F.3d at 206).  For example, "[m]ultiplying figures clearly stated in a complaint is an aspect of that duty."  <u>Id.</u>

We agree with the Second Circuit that a plaintiff's pleading or later paper will trigger the deadlines in Section 1446(b) if the plaintiff's paper includes a clear statement of the

damages sought or if the plaintiff's paper sets forth sufficient facts from which the amount in controversy can easily be ascertained by the defendant by simple calculation. The defendant has no duty, however, to investigate or to supply facts outside of those provided by the plaintiff.

As a policy matter, the plaintiffs argue that a defendant should have a duty to investigate removal early in litigation in order to avoid gamesmanship and to resolve removal as efficiently as possible. The plaintiffs explain:

> If there were no deadline by which a defendant must disclose information in its possession that supports removal, a defendant could strategically litigate a case in state court until it could assess how it was faring there, or decide whether to remove based on its assessment of how much disruption a change of forum would cause the plaintiff. It would also enable a defendant to use delay (as CVS seems to have tried to do here) as a weapon with the hope of exhausting the plaintiff's patience or resources.

The plaintiffs note that CVS's second attempt at removal was based on data calculated from information CVS possessed from the beginning of this litigation, but the second notice of removal was not filed until seventeen months after the case was initially brought. Imposing an obligation on a defendant to investigate and remove early and quickly, they say, would ensure the efficient resolution of removal questions. They argue, moreover, that this burden would not weigh too heavily on a defendant since the

defendant need only establish the amount in controversy by a reasonable probability.

There are contrary policy arguments that Congress could have considered. In the absence of something like a bright-line approach, plaintiffs would have no incentive to specify estimated damages early in litigation. Defendants would protectively remove when faced with an indeterminate complaint in order to avoid missing the mandatory window for removal under Section 1446(b)(1). This would be particularly problematic in CAFA cases, since the large number of class members and the high requirement for the amount in controversy often will be difficult to ascertain immediately. See Cutrone, 749 F.3d at 145. If a defendant sought to later remove under Section 1446(b)(3), the district court would face the unenviable task of determining whether the defendant should have previously discovered that the case was removable. Determining what the defendant should have investigated, or what the defendant should have discovered through that investigation, rather than analyzing what was apparent on (or easily ascertainable from) the face of the plaintiff's pleadings, will not be efficient, but will result in fact-intensive mini-trials.

The plaintiffs are also "in a position to protect themselves" from the gamesmanship of which they warn. Roth v. CHA Hollywood Med. Ctr., L.P., 720 F.3d 1121, 1126 (9th Cir. 2013). The Ninth Circuit explained, "[i]f plaintiffs think that their

action may be removable and think, further, that the defendant might delay filing a notice of removal until a strategically advantageous moment, they need only provide to the defendant a document from which removability may be ascertained." Id. By filing a complaint or subsequent paper that meets the bright-line rule, the plaintiffs will trigger one of the thirty-day clocks in Section 1446(b), and will force the defendant to remove immediately or lose the opportunity to do so later. Id.

We follow, as we must, the Congressional policy choice inherent in the statutory text. As we have previously explained, "the obvious purpose of starting the 30-day clock only after the defendant's receipt of a 'paper' revealing the case's removability is to ensure that the party seeking removal has notice that the case is removable before the limitations period begins to run against it." Woburn Five Cents Sav. Bank v. Robert M. Hicks, Inc., 930 F.2d 965, 970 (1st Cir. 1991). To determine whether the Section 1446(b) clocks have begun to run, therefore, we focus exclusively on the pleadings and other papers provided by the plaintiffs. The defendant must remove within thirty days of a paper, filed by the plaintiffs, that explicitly specifies the amount of monetary damages sought or sets forth facts from which an amount in controversy in excess of $5 million can be readily ascertained. See Cutrone, 749 F.3d at 145.

### 2.    Plaintiffs' Complaint

The plaintiffs argue that CVS's second notice of removal is late because the amended complaint should have satisfied even a bright-line approach "since it set forth a clear damages theory which CVS clearly understood." "To establish the amount in controversy," according to the plaintiffs, "all CVS had to do was determine how many times Shift Supervisors took meal breaks when no other Shift Supervisor, Assistant Manager or Manager was present, and multiply the total time of such breaks by the Shift Supervisors' average hourly wage to obtain a reliable estimate of the amount of unpaid wages owed to the Class."

Essential facts are missing from the complaint. As the plaintiffs concede, CVS would have needed to investigate and supply the number of meal breaks at issue and the average hourly wage to have determined the amount in controversy. The complaint neither states the aggregate amount in controversy nor alleges sufficient information from which CVS could have easily ascertained removability.

### 3.    "Other Paper": Plaintiffs' Email

"[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C.

-20-

§ 1446(b)(3).[6]  The district court determined that "[t]he only possibly qualifying document" was an email sent to CVS by plaintiffs' counsel on January 18, 2013, which estimated the number of meal breaks without Shift Supervisor coverage over an almost two-year period.  Romulus III, 2014 WL 2435089, at *1.  The district court held that this email was "inadequate to serve as an 'other paper' because it was based entirely on information provided by defendant."  Id.

The interpretation of the phrase "other paper" in Section 1446(b)(3) is another issue of first impression for this circuit.[7] There are cogent arguments for both an expansive and limited construction of this phrase.  Given the ambiguity present in the text, we rely on the clear congressional intent to interpret "other paper" broadly.

Section 1446(b)(3) lists the documents that can trigger the second removal window: "a copy of an amended pleading, motion,

---

[6]  In a non-CAFA case, the availability of this avenue for removal is limited to one year, "unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  28 U.S.C. § 1446(c)(1).  This one-year cap is irrelevant to the present case since it does not apply to the removal of class actions under CAFA.  Id. § 1453(b).

[7]  District courts in this circuit that have addressed this issue have come to opposite conclusions as to how narrowly to construe the phrase.  Compare Mill-Bern Assocs., Inc. v. Dall. Semiconductor Corp., 69 F. Supp. 2d 240 (D. Mass. 1999) (interpreting narrowly), and Borgese v. Am. Lung Ass'n of Me., No. 05-88, 2005 WL 2647916 (D. Me. Oct. 17, 2005) (same), with Parker v. Cnty. of Oxford, 224 F. Supp. 2d 292 (D. Me. 2002) (interpreting broadly).

order or other paper."  28 U.S.C. § 1446(b)(3).  The doctrine of

ejusdem generis would suggest that the term "other paper" should be

limited to documents similar to a pleading, motion, or order.  See

Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 114-15 (2001)

("[T]he general words are construed to embrace only objects similar

in nature to those objects enumerated by the preceding specific

words." (citation omitted) (internal quotation marks omitted)).

Relying on this canon of statutory interpretation, the district

court in Mill-Bern Associates, Inc., concluded that "other paper"

must be limited to documents that are "formally filed and/or served

on the parties," like a filed affidavit.  69 F. Supp. 2d at 243.

Another part of the statute could support a broader

textual interpretation.  Specifically, Section 1446(c)(3)(A)

states:

> If the case stated by the initial pleading is
> not removable solely because the amount in
> controversy does not exceed the amount
> specified in section 1332(a), information
> relating to the amount in controversy in the
> record of the State proceeding, or in
> responses to discovery, shall be treated as an
> "other paper" under subsection (b)(3).

28 U.S.C. § 1446(c)(3)(A) (emphasis added).  It is nevertheless

unclear, from the text alone, whether this provision applies to

CAFA cases.  On the one hand, Congress chose to specifically

mention only non-CAFA cases, removed under diversity jurisdiction

pursuant to 28 U.S.C. § 1332(a), when statutorily broadening the

scope of the term "other paper."  On the other hand, Congress

-22-

drafted CAFA to incorporate all of Section 1446, except for the one-year limitation on removal under Section 1446(c)(1). See id. § 1453(b). Moreover, there is a general presumption that "the same term has the same meaning when it occurs here and there in a single statute." Envtl. Def. v. Duke Energy Corp., 549 U.S. 561, 574 (2007).

In general, "[t]he federal courts have given the reference to 'other paper' an expansive construction and have included a wide array of documents within its scope." 14C Wright & Miller, Federal Practice and Procedure § 3731 (4th ed.). As such,

> [V]arious discovery documents such as deposition transcripts, answers to interrogatories and requests for admissions, as well as amendments to ad damnum clauses of complaints, and correspondence between the parties and their attorneys or between the attorneys usually are accepted as "other papers," receipt of which can initiate a 30-day period of removability.

Id. (citations omitted).

Two courts of appeals have held that informal correspondence from the plaintiff to the defendant constituted an "other paper" under Section 1446(b). In Addo v. Globe Life & Accident Insurance Co., the Fifth Circuit held that a post-complaint demand letter, which offered to settle for above the amount in controversy, triggered Section 1446(b) as an "other paper." 230 F.3d 759, 761-62 (5th Cir. 2000). Likewise, the Ninth

Circuit held that a letter from the plaintiffs, sent in preparation for mediation, which estimated damages to exceed $5 million "put [the defendant] on notice as to the amount in controversy." Babasa v. LensCrafters, Inc., 498 F.3d 972, 975 (9th Cir. 2007). The letter qualified as an "other paper," and necessitated removal within thirty days. See id.

The Senate Report accompanying the passage of CAFA supports the broad interpretation of the phrase "other paper" and resolves for us any uncertainty arising from the text of the statute. The Committee on the Judiciary explicitly stated that it "favor[ed] the broad interpretation of 'other paper' adopted by some courts to include deposition transcripts, discovery responses, settlement offers and other documents or occurrences that reveal the removability of a case." S. Rep. No. 109-14, at 9 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 10. On balance, this clear congressional intent outweighs the usual application of ejusdem generis and resolves the lack of clarity in Section 1446(c)(3)(A).

We hold that correspondence from the plaintiff to the defendant concerning damages can constitute an "other paper" for purposes of Section 1446(b)(3). Under Section 1446(b)(3), the correspondence triggers the thirty-day clock if it is the first document in which the plaintiff puts the defendant on notice that the criteria for removal are met.

In this case, CVS had provided the plaintiffs with time punch data for Shift Supervisors in the course of settlement negotiations. By analyzing the data, experts from both sides were able to estimate the number of meal breaks during which a Shift Supervisor was working without another Shift Supervisor. In a telephone conversation, both parties orally exchanged their calculations. CVS asked the plaintiffs to provide their estimate in written form, which the plaintiffs did by email on the same day. The email estimated 116,499 meal breaks without Shift Supervisor coverage from August 2010 through June 2012.

In theory, one more bit of information would be helpful for precision. Two other types of managerial employees, Store Managers and Assistant Store Managers, could be working during some portion of these meal breaks without Shift Supervisor coverage. The plaintiffs argue that their estimate in the January 18, 2013, email "could not by itself establish class damages because it did not account for whether Managers or Assistant Managers were present during those breaks, which would have allowed the Shift Supervisors to leave the premises and thus not result in a wage law violation." The plaintiffs state that they had not "communicated to CVS 'the precise number of potential wage and hour violations for which they seek redress' because they still lacked the information regarding Managers and Assistant Managers needed to make such a calculation."

Whether data even exists on the presence of Store Managers and Assistant Store Managers, to reduce any damages estimate, has been of constant dispute in this litigation. Going back to at least the first remand proceeding, the plaintiffs have asserted in their district court filings that CVS has a statutory obligation to maintain records of the time actually worked by all its employees, including Managers and Assistant Managers, and that CVS "cannot hide behind the fact that it failed to do so." The fair implication of the plaintiffs' position is that CVS will ultimately be liable for breaks for which such managerial coverage cannot be reliably established. To us, that aspect of plaintiffs' own theory is substantial enough to place all breaks without Shift Supervisor coverage in controversy.[8] The plaintiffs provided CVS with this number in the email on January 18, 2013.

With the estimate in the plaintiffs' email, CVS had all of the information necessary to readily ascertain the matter's

---

[8] We note in addition that CVS has admitted that this putative "evidence" of managerial coverage, which assists it in reducing the scope of potential damages, is either non-existent or unreliable. At oral argument, CVS stated, "we don't have the data that [] would prove or disprove the plaintiffs' claim" on this point. According to CVS, no daily time records exist for these exempt employees. CVS admitted that the evidence that does exist -- anecdotal evidence and written schedules subject to change -- is not reliable. CVS acknowledged that if the plaintiffs are correct that CVS should have maintained daily time records for exempt managers, "no reduction [in the number of breaks] was or is warranted." CVS may not switch its position on this issue later. It is bound by its judicial admission. Cf. Lima v. Holder, 758 F.3d 72, 79 (1st Cir. 2014).

removability from the plaintiffs' own papers.  As the plaintiffs had themselves said, all CVS had to do to determine an estimate of damages was multiply the estimate of the number of meal breaks at issue by the average hourly wage.  The record from the first removal proceeding included the uncontested average hourly wage, $13.43.[9]  With the email, the plaintiffs then provided the number of breaks at issue.  CVS was able easily to calculate a total of $5,611,893 damages at issue.[10]

---

[9]  Although the average hourly wage was originally provided by CVS based on an investigation of its own data, that uncontested fact became part of the record in the first removal attempt.  CVS was under no duty to provide this figure originally, but could not subsequently ignore it.  Utilizing the uncontested average hourly wage in the record was part of CVS's duty to apply reasonable intelligence when ascertaining removability.

[10]  According to CVS,

> Plaintiffs' review of the Time & Attendance Data revealed a total of 116,499 potential instances in which a violation occurred during the period August 2010 through June 2012. This equates to 5,065 alleged violations per month.  Extrapolating this average over the class period of fifty-five (55) months (three years prior to the date the Complaint was filed through March 31, 2013) yields 278,575 alleged violations.  Thus, using plaintiffs' estimate of the number of alleged violations and an average hourly wage for Shift Supervisors in Massachusetts, the potential damages exceed $5,000,000 as follows:
>
> *278,575 unpaid meal periods x $13.43/hr (average hourly rate) x 0.5 hours (30 minute meal period) = $1,870,631.*
>
> Taking into account treble damages mandated by the Wage Act, plaintiffs' alleged damages are

The district court observed that the information contained in the plaintiffs' email was based on CVS's own data and that CVS could have performed its own analysis to reach the same estimate earlier in litigation.[11] See Romulus II, 2014 WL 1271767, at *2. But it erred in concluding that this fact made CVS's second notice of removal untimely. The timeliness inquiry is limited to the information in the plaintiffs' papers, regardless of whether its original source is the defendant. The defendant has no duty to perform significant investigation of its own data to ascertain removability. The test is not whether the information is "new," but when the plaintiffs' papers "first" enable the defendant to make the requisite merits showing to the district court. See 28 U.S.C. § 1446(b)(3).

The email qualifies as an "other paper from which it may first be ascertained that the case is one which is . . . removable," and required the defendant to remove within

---

at least $5,611,893 ($1,870,631 x 3 = $5,611,893).

[11] The district court stated that CVS "'had a duty to make a reasonable inquiry regarding the amount in controversy at the time the suit was filed,' . . . particularly where it, not plaintiffs, possessed the records and data necessary to make the relevant calculations." Romulus II, 2014 WL 1271767, at *2 (citation omitted). It is true, but irrelevant for present purposes, that plaintiffs often do not possess the information from which to make a damages estimate at the beginning of litigation. Nevertheless, Congress chose to impose the strict time limits of Section 1446(b) only once the plaintiff put the defendant on notice of the matter's removability.

thirty days.  Id.  CVS's second notice of removal, filed within thirty days of the email, was timely.[12]

B.        The Substantive Removal Question: Amount-in-Controversy Under Section 1332

Although CVS's notice of removal was timely, it still must show that the CAFA jurisdictional prerequisites for federal jurisdiction are met.  The only element at issue in this removal is whether "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(2).  As we have stressed, "the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover."  Amoche, 556 F.3d at 51.

The removing defendant bears the burden of establishing federal jurisdiction under CAFA.  Id. at 48.  We have previously

_____

[12]  Although CVS originally argued for removal based on Section 1446(b)(3), it now urges us to hold that it could remove at any time based on its own investigation if neither time limit in Section 1446(b) applied.  Three circuits have agreed that a defendant can remove on the basis of its own investigation if neither of the statutory grants for removal in Section 1446(b) have been triggered and transgressed.  See, e.g., Cutrone, 749 F.3d at 146-48; Walker, 727 F.3d at 825-26; Roth, 720 F.3d at 1125-26.  We do not address the complicated questions concerning the possibility of removal outside of the specified CAFA statutory procedures. Whether CVS could have independently removed, pursuant to 28 U.S.C. § 1441, based on an investigation of its own data is irrelevant since it was required to remove within thirty days of the plaintiffs' email on January 18, 2013.

held that a defendant "must show a reasonable probability that more than $5 million is at stake in this case." Id. at 50.[13]

CVS's second notice of removal calculated the amount in controversy to be at least $5,611,893.[14] In doing so, CVS was merely meeting its obligation to apply a "reasonable amount of intelligence" to the plaintiffs' papers. See Cutrone, 749 F.3d at 145.

CVS updated its damages estimate in its opposition to the plaintiffs' motion to remand. In the plaintiffs' favor, CVS discounted the number of meal breaks when there was no other Shift Supervisor working by 15 percent in an attempt to estimate the number of meal breaks at which no managerial employees were

---

[13] We easily dispose of CVS's ill-founded argument that the district court's conclusion, using the reasonable probability language from Amoche, "articulated the wrong standard." CVS asserts that the court must apply a preponderance standard based on 28 U.S.C. § 1446(c)(2)(B), enacted as part of the Federal Courts Jurisdiction and Venue Clarification Act of 2011 ("JVCA"). CVS lost that battle before it filed its brief. In Amoche, we expressly noted that "the reasonable probability standard is, to our minds, for all practical purposes identical to the preponderance standard adopted by several circuits." 556 F.3d at 50 (citing Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 536, 543 (7th Cir. 2006)). We express no view on the applicability of Section 1446(c)(2) to CAFA cases since the standards, notwithstanding nomenclature, are identical.

[14] CVS extrapolated the number of breaks without Shift Supervisor coverage over a class period of fifty-five months, measured from "three years prior to the date the Complaint was filed through March 31, 2013." Multiplying this number of unpaid meal breaks (278,575) by one-half of the average hourly rate ($13.43) totaled $1,870,631. With treble damages as mandated by the Wage Act, "plaintiffs' alleged damages are at least $5,611,893."

present.  Then, CVS extended the class period, updated the average hourly wage, included Overtime/Premium rates, and added a reasonable estimate of attorneys' fees.[15]  CVS provided the information for its calculations, as set forth in Appendix A, showing damages of $6,291,285.

The plaintiffs raised objections to CVS's revised calculation.  First, the plaintiffs take issue with CVS's "cherry-picked 15% assumption."[16]  Second, the plaintiffs argue that CVS should have calculated the amount in controversy through the time of removal.  Third, the plaintiffs argue that "CVS's entire calculation is premised on the assumption that the unlawful policies identified in the Complaint continue to this day."  Fourth, the plaintiffs object that the estimate for attorneys' fees is "entirely speculative."

The district court concluded that the "Plaintiffs' arguments on these points are persuasive, and I find that

_____

[15]   We have held that attorneys' fees are generally not considered when calculating the amount in controversy except where provided by contract or explicitly allowed by statute.  See Spielman v. Genzyme Corp., 251 F.3d 1, 7 (1st Cir. 2001).  Here, the amount is properly included because Mass. Gen. Laws ch. 151, § 1B explicitly permits the recovery of attorneys' fees, and the parties do not dispute the point.

[16]   For this figure, CVS relies on plaintiff Robert Bourassa's testimony that the store manager was present during only 12 to 15% of his breaks.  The plaintiffs note that plaintiff Cassandra Beale provided a contrary estimate.  Specifically, Ms. Beale estimated that she was required to be in the store for 60 to 70% of her breaks, meaning that the store manager must have been present during the remaining 30 to 40% of her breaks.

defendant, despite having 'better access to the relevant information,' has failed to 'show a reasonable probability that more than $5 million is at stake in this case.'" Romulus II, 2014 WL 1271767, at *3 n.3 (quoting Amoche, 556 F.3d at 50-51). But, it made no factual findings and provided no other explanation.

We do not believe that remand for a further explanation of the district court's succinct reasons for rejecting CVS's figure is appropriate. The district court made no factual findings and so no deference is owed. As we said in Amoche, "[m]erely labeling the defendant's showing as 'speculative' without discrediting the facts upon which it rests is insufficient." 556 F.3d at 51.

Whether our review is de novo or for clear error, we hold that the evidence demonstrates a reasonable probability that the amount in controversy exceeds $5 million even when accounting for the plaintiffs' objections. As we have held, all breaks without Shift Supervisor coverage are at issue in light of the ongoing dispute over the presence of Managers or Assistant Managers. Without the discount, the plaintiffs' arguments fail to reduce the amount at issue to less than $5 million even if the time frame is limited and if the attorneys' fees are omitted. Multiplying the number of breaks without Shift Supervisor coverage per month (5065) by the number of months between July 25, 2008 and the second notice of removal (approximately fifty-four) by half of the updated average hourly wage ($13.53/2) by three for treble damages results

in a damages estimate of $5,550,885.45. That is enough to show a reasonable probability that more than $5 million is at issue in this case.

## IV. Conclusion

In Amoche, we stressed that we wished to avoid "extensive and time consuming litigation over the question of the amount in controversy in CAFA removal cases," and that consideration of preliminary issues of removal "should not devolve into a mini-trial regarding the amount in controversy." Amoche, 556 F.3d at 50. Our holdings further having clear and efficient rules to govern the process of CAFA removals, and, above all, are in keeping with the Congressional intent in CAFA that the federal courts be available forums to hear significant class actions. See id. at 47-48. This case is now in federal court to stay, and the remand order is reversed.

So ordered.

CVS's Damage Calculations Through July 23, 2013

| | |
|---|---|
| Total Number of Violations without Shift Supervisor Coverage from Email | 116,499 |
| 15% Reduction to Account for Meal Breaks Where a Store Manager or Assistant Store Manager was Present | 99,024 |
| Number of Months in Sample (August 2010 - June 2012) | 23 |
| Number of Violations Per Month in Sample (99,024 violations/23 months) | 4305.4 |
| Number of Months in Class Period (July 25, 2008 - July 23, 2013) | 59 |
| Number of Violations in Class Period (4305.4 violations per month x 59 months) | 254,018 |
| Updated Average Hourly Wage | $13.53 |
| Potential Exposure at Straight Time (0.5 x Avg. Wage x Violations) | $1,718,432 |
| Potential Exposure Incorporating OT/Premium Rates | $1,906,428 |
| Treble Damages | $5,719,285 |
| Estimated Attorneys Fees (10% of Potential Recovery) | $572,000 |
| Total Amount in Controversy | $6,291,285 |