# United States Court of Appeals
## For the First Circuit

No. 24-1156

289 KILVERT, LLC, successor in interest to
PAUL and BARRY MILLER PARTNERSHIP, LLC,

Plaintiff, Appellee,

v.

SBC TOWER HOLDINGS LLC,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary S. McElroy, U.S. District Judge]

Before

Gelpí, Kayatta, and Aframe,
Circuit Judges.

Steven M. Cowley, with whom Duane Morris LLP, James T. Huggard, and Burns & Farrey, P.C. were on brief, for appellant.

John O. Mancini, with whom Mancini Carter, PC was on brief, for appellee.

March 20, 2025

**GELPÍ**, **Circuit Judge**.   May a Rhode Island statute, R.I. Gen. Laws § 8-8-3(a)(2) (2025), allocating jurisdiction over landlord-tenant disputes to its district courts, preclude removal to federal court?  Appellant SBC Tower Holdings LLC, ("SBC Tower") and Appellee 289 Kilvert, LLC ("Kilvert") have a commercial lease agreement in which Rhode Island law governs disputes that arise under the same.  Kilvert, the lessor, sued SBC Tower, the lessee, in Rhode Island district court, claiming that SBC Tower breached the agreement.  Invoking diversity jurisdiction, SBC Tower removed the case to the United States District Court for the District of Rhode Island ("the federal court"), but Kilvert, in turn, moved to remand.   Kilvert did not dispute the presence of diversity jurisdiction, but it contended that the federal court could not entertain the matter given that the Rhode Island district court has exclusive jurisdiction.  The federal court agreed.  SBC Tower appealed.  We **reverse**, and in doing so answer the question before us in the negative.

## I. BACKGROUND

Kilvert is a company registered in Rhode Island with its principal place of business therein.  Several years ago, it bought a commercial property located at 289 Kilvert Street, in Warwick, Rhode Island, and obtained rights and interests under a telecommunication tower lease.  SBC Tower, a Delaware company with its principal place of business in Texas, had been leasing said

telecommunication tower for a period of years. After Kilvert acquired the rights and interests under the lease, it claimed that SBC Tower had breached its terms. Specifically, it alleged that SBC Tower owed fifty percent of the payments received from up to six subleases, at a minimum of $800 per month for each sublease, for more than twenty years. As a result, Kilvert filed a Commercial Property Eviction Complaint in Rhode Island district court, seeking eviction and damages for unpaid rent and the use and occupation of the property.

SBC Tower filed a timely notice of removal to federal court based on diversity jurisdiction.[1] Kilvert moved to remand, arguing that the lease's choice-of-law provision mandated that the dispute be adjudicated exclusively in Rhode Island district court.

---

[1] A defendant may remove a civil action filed in state court to federal district court based on diversity jurisdiction where jurisdiction over the action would have existed had the action initially been filed in federal district court, and where no defendant is a citizen of the state in which the action was brought. 28 U.S.C. § 1441(a),(b). To meet diversity jurisdiction, the matter in controversy must exceed "the sum or value of $75,000, exclusive of interest and costs," and must be "between . . . citizens of different States." 28 U.S.C. § 1332. Here, Kilvert is a citizen of Rhode Island, and SBC Tower is a citizen, directly or through its members, of Delaware, Texas, Georgia, New Jersey, Illinois, and New York. Because Kilvert claims that SBC Tower owes fifty percent of the payments received from up to six subleases, at a minimum of $800 per month for each sublease for twenty years, the amount in controversy exceeds $75,000. Thus, the requirements for diversity jurisdiction are met.

The lease contains a choice-of-law provision that states: "This Agreement shall be governed by, construed and enforced in accordance with the law of the State of Rhode Island." The fourth amendment to the lease also contains a choice-of-law provision, stating the following:

> "Governing Law. Notwithstanding anything to the contrary contained in the Lease and in this Amendment, the Lease and this Amendment shall be governed by and construed in all respects in accordance with the laws of the State or Commonwealth in which the Leased Premises is situated, without regard to the conflicts of laws provisions of such State or Commonwealth."

Kilvert argued that since Rhode Island law gives district courts exclusive original jurisdiction over all actions between landlords and tenants, R.I. Gen. Laws § 8-8-3(a)(2), the parties must litigate their dispute in Rhode Island district court. The statute specifically provides that state district courts "shall have exclusive original jurisdiction [over] . . . [a]ll actions between landlords and tenants . . . and all other actions for possession of premises." Id. The federal court agreed and granted Kilvert's motion to remand, holding that because Rhode Island law "mandates the state district court as the proper court for this action, the defendant is bound by that requirement and removal . . . was improper." 289 Kilvert, LLC v. SBC Tower Holdings, LLC, No. 23-00530, 2024 WL 490452, at *1 (D.R.I. Feb. 8, 2024).

- 4 -

## II. DISCUSSION

We review de novo "[t]he district court's jurisdictional determination on removal" as well as "[i]ssues of statutory interpretation." Romulus v. CVS Pharmacy., Inc., 770 F.3d 67, 73 (1st Cir. 2014) (citations omitted).

At the outset, we must determine whether the instant appeal is properly before us. Kilvert argues that this court has no jurisdiction to hear this appeal because, under 28 U.S.C. § 1447(d), "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal" unless the case "was removed pursuant to section 1442 or 1443" of the statute. Because SBC Tower did not remove the case under sections 1442 and 1443, Kilvert says, this court cannot hear this appeal. But that is not so.

"[T]he Supreme Court has 'interpreted' section 1447(d)'s prohibition on review 'to cover less than its words alone suggest.'" LeChase Constr. Servs., LLC v. Argonaut Ins. Co., 63 F.4th 160, 164 (2d Cir. 2023) (quoting Powerex Corp. v. Reliant Energy Servs., Inc., 551 U.S. 224, 229 (2007)). Indeed, the Supreme Court made clear that "§ 1447(d) must be read in pari materia with § 1447(c), so that only remands based on grounds specified in § 1447(c) are immune from review under § 1447(d)." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 711-12 (1996) (quoting Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 127

(1995)).  "In other words, its 'prohibition on appellate review remains limited to remands based on the grounds specified' elsewhere in section 1447."  LeChase Constr. Servs., LLC, 63 F.4th at 164 (quoting Powerex, 551 U.S. at 230).  Those grounds are "lack of subject matter jurisdiction" and "defects in removal procedure."  Quackenbush, 517 U.S. at 712.  The parties do not allege, and the district court did not identify, any problems with the removal procedure.  And the district court's order nowhere indicates any doubt as to its subject-matter jurisdiction over the dispute, instead characterizing its decision as "an issue of enforcing what the parties agreed to."  Therefore, we have the authority to entertain this appeal because the federal court's remand was not grounded in section 1447(c).

Having jurisdiction, we turn to interpreting the Rhode Island statute at issue, R.I. Gen. Laws § 8 8 3(a)(2), and specifically, whether its mandate that certain Rhode Island district courts "have exclusive jurisdiction" over landlord-tenant disputes precludes the federal court from adjudicating this case.

Kilvert submits that this case belongs exclusively in Rhode Island district court despite the presence of diversity jurisdiction.  Kilvert posits that (1) Kilvert and SBC Tower agreed, in the lease, to Rhode Island law as their choice of law; (2) Rhode Island law grants exclusive jurisdiction over landlord-tenant disputes to state district courts; (3) the parties

- 6 -

indeed have a landlord-tenant dispute; and (4) thus they must litigate exclusively in Rhode Island district court. We disagree with Kilvert's conclusion.

We must begin with the text of the statute. Nat'l Ass'n of Mfrs. v. Dep't of Def., 583 U.S. 109, 127 (2018) (explaining that where text "is unambiguous, our inquiry begins with the statutory text, and ends there as well" (internal quotation marks and citations omitted)); see also Parrillo v. R.I. Hosp., 202 A.3d 942, 946 (R.I. 2019) ("[W]e begin our analysis with an examination of the text of the statute . . . ."). The language at issue provides that state district courts "shall have exclusive original jurisdiction [over] . . . [a]ll actions between landlords and tenants pursuant to chapter 18 of Title 34 and all other actions for possession of premises and estates notwithstanding the provisions of subsection (c) of this section." R.I. Gen. Laws § 8-8-3(a)(2). The parties advance two competing interpretations of the statute's reach. On the one hand, SBC Tower argues that the statute allocates exclusive jurisdiction only among Rhode Island state courts, that is, between the state district and superior courts. Kilvert, on the other, has a more sweeping take. It posits that the statute apportions jurisdiction among every court -- whether state or federal -- sitting in Rhode Island. Consequently, Kilvert submits that by choosing Rhode Island law,

the parties ostensibly consented to the exclusive jurisdiction of the Rhode Island district court to hear landlord-tenant disputes.

Read in isolation, the Rhode Island statute's provision covering landlord-tenant disputes does not specify whether it purports to allocate jurisdiction among state and federal courts, or just among state courts. See R.I. Gen. Laws § 8-8-3(a)(2). But to discern the breadth of a provision with "uncertain reach," we do not confine our review "to a single sentence when the text of the whole statute gives instruction as to its meaning." Maracich v. Spears, 570 U.S. 48, 65 (2013) (citing U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 455 (1993)); see also State v. Hazard, 68 A.3d 479, 485 (R.I. 2013) ("[W]e must consider the entire statute as a whole . . . ." (quoting Mendes v. Factor, 41 A.3d 994, 1002 (R.I. 2012))). Simply put, we do not interpret a statute's text "in a vacuum"; we read the words "in their context and with a view to their place in the overall statutory scheme." Sturgeon v. Frost, 577 U.S. 424, 438 (2016) (quoting Roberts v. Sea-Lands Servs., Inc., 566 U.S. 93, 101 (2012)); see also Hazard, 68 A.3d at 485 (affirming that "individual sections must be considered in the context of the entire statutory scheme, not as if each section were independent of all other sections").

Engaging in that exercise, we find that the text of the Rhode Island statute, read as a whole, suggests that it covers

only the delegation of jurisdiction among state -- not federal -- courts.  In other words, the clause at issue reflects an attempt to apportion subject matter jurisdiction solely among Rhode Island state courts.  It does not purport to divest a federal court of jurisdiction to hear landlord-tenant disputes which are properly before it.

Take, for instance, the other provisions in § 8-8-3(a). Beyond landlord-tenant disputes, the Rhode Island statute also grants exclusive jurisdiction to state district courts over "[a]ll civil actions at law . . . wherein the amount in controversy does not exceed . . . $5,000," but not most causes in equity, R.I. Gen. Laws § 8-8-3(a)(1); "[a]ll actions of replevin where the goods and chattels to be replevied" do not exceed $5,000, id. § 8-8-3(a)(3); "[a]ll violations of minimum housing standards," with certain exceptions, id. § 8-8-3(a)(4); "[a]ll suits and complaints for offenses against the bylaws, ordinances, and regulations of cities and towns," id. § 8-8-3(a)(5); and "[a]ll other actions, proceedings, and matters of whatever nature which are or shall be declared to be within the jurisdiction of the court by the laws of the state," id. § 8-8-3(a)(6).  The statute also establishes that the "district court shall have concurrent original jurisdiction with the superior court of all civil actions at law wherein the amount in controversy exceeds the sum of five thousand dollars

- 9 -

($5,000) and does not exceed ten thousand dollars ($10,000)." Id. § 8-8-3(c).

Said provisions form part of a broader statutory scheme designed to allocate jurisdiction among state courts, rather than purporting to strip federal courts of jurisdiction. See, e.g., R.I. Gen. Laws § 8-2-14(a) (granting exclusive jurisdiction to superior courts over actions at law where the amount in controversy exceeds $10,000). More so, the statute's text signals no intent to divest federal courts of diversity jurisdiction if the parties agree to Rhode Island law as their choice of law. The Rhode Island statute provides, for instance, that if tenants are in arrears and the landlord wishes to evict them, the landlord cannot go to the Rhode Island superior or municipal court. § 8-8-3(a)(2). Instead, the landlord must go to Rhode Island district court, since that is the only state court authorized to adjudicate such grievance. See id. The Rhode Island statute, therefore, does not divest the federal court of diversity jurisdiction.

Our decision in Emigrant Mortgage Co. v. Bourke is on point. 127 F.4th 385, 389-90 (1st Cir. 2025). There, appellant contended that the United States District Court for the District of Massachusetts had no power to hear the case because a Massachusetts statute gave the Land Court exclusive jurisdiction to adjudicate "[c]omplaints affecting title to registered land." Id. at 389 (alteration in original) (quoting Mass. Gen. Laws ch.

185, § 1 (a 1/2)).  We rejected such contention, reiterating the longstanding principle that "[o]nly Congress may determine a lower federal court's subject-matter jurisdiction."  Id. (alteration in original) (quoting Kontrick v. Ryan, 540 U.S. 443, 452 (2004)). We further asserted that federal jurisdiction "is determined 'by the law of the court's creation . . . [and] cannot be defeated by the extraterritorial operation of a [state] statute.'"  Id. (second alteration in original) (quoting Marshall, 547 U.S. at 314).  So, we held, the Massachusetts statute could not be read to "divest the federal district court of jurisdiction or its ability to grant the requested relief."  Id. at 390 (collecting cases).

The exact rationale applies here.  An expansive reading of the Rhode Island statute would infringe on -- indeed, would directly conflict with -- federal court diversity jurisdiction under 28 U.S.C. § 1332.  See U.S. Const. art. VI, cl. 2 (establishing that the "Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land . . . .").  Given the obvious conflict, we cannot say that Kilvert's reading wins the day.  See  Kansas v. Garcia, 589 U.S. 191, 202 (2020) ("If federal law 'imposes restrictions or confers rights on private actors' and 'a state law confers rights or imposes restrictions that conflict with the federal law,' 'the federal law takes precedence and the state law is preempted.'" (quoting Murphy v. Nat'l Collegiate Athletic Ass'n., 584 U.S. 453, 477 (2018))); see

- 11 -

also Joseph W. Glannon, Examples & Explanations: Civil Procedure 210 (9th ed. 2023) ("[I]f the conflict is between a federal statute and a state law, [the federal] statute must be applied . . . because . . . federal statutes are the 'Supreme Law of the Land' . . . ." (quoting U.S. Const. art. VI, cl. 2).

Finally, we are not convinced by Kilvert's suggestion at oral argument that the choice-of-law provision contained an implied exclusive forum-selection clause.[2] To be sure, the parties could have bound themselves to litigate in Rhode Island district court if they had so specifically agreed -- that is, if they had assented to an exclusive forum-selection clause (or if SBC Tower decided not to remove the case to federal court).[3] See Huffington v. T.C. Grp., LLC, 637 F.3d 18, 21 (1st Cir. 2011) ("A forum-selection clause may make the designated forum merely available for resolution of disputes or it may make it 'exclusive,'

_____

[2] A forum-selection clause is a contractual provision in which the parties agree to the forum in which they will litigate. See Forum-Selection Clause, Black's Law Dictionary (11th ed. 2019).

[3] A forum-selection clause "does not oust the jurisdiction of the [federal] courts." LFC Lessors, Inc. v. Pac. Sewer Maint. Corp., 739 F.2d 4, 6 (1st Cir. 1984) (quoting Cent. Contracting Co. v. Md. Cas. Co., 367 F.2d 341, 345 (3d Cir. 1966)). Indeed, "even a mandatory forum-selection clause does not in fact divest a court of jurisdiction that it otherwise retains." Silva v. Encyclopedia Britannica, Inc., 239 F.3d 385, 388 n.6 (1st Cir. 2001). The forum-selection clause "merely constitutes a stipulation in which the parties join in asking the court to give effect to their agreement by declining to exercise its jurisdiction." LFC Lessors, 739 F.2d at 6 (quoting Cent. Contracting Co., 367 F.2d at 345).

at least in the sense that either side can insist upon it as the venue." (citing <u>Rivera</u> v. <u>Centro Médico de Turabo, Inc.</u>, 575 F.3d 10, 17 (1st Cir. 2009)). But the parties did no such thing. The requirements for diversity jurisdiction being met, SBC Tower properly removed this case to federal court. And because federal district courts have a "virtually unflagging obligation to exercise their lawful jurisdiction and resolve the matters properly before them," we hold that the federal court must adjudicate the parties' dispute. <u>Nazario-Lugo</u> v. <u>Caribevisión Holdings, Inc.</u>, 670 F.3d 109, 114 (1st Cir. 2012) (quoting <u>Colo. River Water Conservation Dist. </u> v. <u>United States</u>, 424 U.S. 800, 817 (1976)).

### III. CONCLUSION

For the foregoing reasons, we **<u>reverse</u>** the district court's judgment and **<u>remand</u>** for further proceedings consistent with this opinion.

It is so ordered.